## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ED PATTERSON                                          CIVIL ACTION

VERSUS                                                NO. 13-6293

OMEGA PROTEIN, INC. AND                               SECTION C(1)
ABC INSURANCE COMPANY

## ORDER AND REASONS

Currently pending before the Court is Omega Protein Inc.'s ("Omega") Motion for

Partial Summary Judgment. Rec. Doc. 23. Plaintiff Ed Patterson opposes. Rec. Doc. 27. Having

considered the record, the law, and the submissions of counsel, the motion will be GRANTED

IN PART and DENIED IN PART.

I. Background

This case concerns a back injury allegedly sustained by plaintiff on June 12, 2013, while

he was working on fishing vessel, the F/V G.P. Amelia, owned and operated by Omega. On the

date in question, plaintiff was working for Omega as the mate aboard the Amelia. As mate,

plaintiff was only outranked by the Captain, Carlton Harcum, Jr. Pl.'s Dep. 114:16-21, March

28, 2014. However, plaintiff's crew was engaged in a type of fishing that required multiple

vessels - two purse boats hauling a single net through the water to catch the fish and a steamer

that brought in each net-full or "set." *See* Rec. Doc. 23-1 at 2.[1] Plaintiff and the Captain each

manned one of the purse boats with a five member crew. *See* Harcum Dep. 50:9-15, Apr. 2,

2014. Plaintiff was the highest ranking crew member on his purse boat and therefore was in

charge of that vessel. Pl.'s Dep. 114:13-15.

---

[1]Although the assertions of Omega's motion does not constitute competent summary
judgment evidence, *see* Fed. R. Civ. P. 56(c), this aspect of Omega's fishing operations is neither
disputed nor particularly relevant in this case.

Plaintiff's injury occurred on June 12, 2013, when the crew had already brought in three sets and was working on a fourth. Pl.'s Dep. 103:21-104:6. As Captain Harcum explained, an important task aboard the mate's boat is to pull up the net at the end of each set to remove slack from it. Harcum Dep. 37:16-20. This process prevents fish from escaping and makes it easier for the steamer to gather the set. *Id.* at 37:16-20, 52:8-12. The functional weight of the net depends on the number of fish in the set. *Id.* at 39:13-15. Plaintiff had been trained to lift with his back straight using his arms and legs. *Id.* at 26:11-14. However, the fact that the net has to be pulled up while the puller is leaning over the bow of the ship makes it "difficult" to use proper technique. *Id.* at 26:15-18.

At the end of the fourth set on June 12, plaintiff began pulling up the net while most of the crew was still engaged in other work assignments. Pl.'s Dep. 105:9-10. At some point before or after plaintiff began pulling up on the net by himself, he called to a crew member, Ben Turrell, for help. *Id.* at 104:16-105:8. Plaintiff called three times and received only a blank stare in return. *Id.* Plaintiff continued to pull the net until he felt his back "pop." *Id.* at 101:17-19. Captain Harcum noticed plaintiff having trouble with the net which led him to suspend operations.  Harcum Dep. 30:8-15. Captain Harcum further sent Martin Melton, a crew member that was working on the captain's boat, to assist plaintiff. Pl.'s Dep. 113:14-23; Harcum Dep. 36:1-6. Plaintiff told Melton that he had been injured, and Captain Harcum instructed plaintiff to sit on the engine box until the crew finished the set. Melton Dep. 16:2-9. Thereafter, plaintiff reported the injury and accident to Omega. *Id.* Plaintiff worked for the rest of the week doing assignments that involved no manual labor, before seeing a doctor at Captain Harcum's recommendation. Harcum Dep. 42:25-46:1.

2

Plaintiff filed this complaint for damages on October 13, 2013. Rec Doc. 1. Plaintiff claims that the Amelia's captain was negligent failing to "provide adequate assistance," that Omega was negligent in failing to select a competent master and crew, and that the unseaworthiness of the Amelia is a proximate cause of his injury. *Id.* Plaintiff lastly claims entitlement to receive maintenance and cure for the injuries he suffered on June 12. *Id.*

Omega filed the pending Motion for Partial Summary Judgment on May 6, 2013. In it, Omega argues that plaintiff can show no genuine issue of material fact with respect to the unseaworthiness of the Amelia at the time of the incident in question. Rec. Doc. 23-1 at 4-7. Omega further contends that plaintiff solely caused his own injury by failing to wait for assistance. *Id.* at 7-12. Omega argues that primary duty doctrine defeats any recovery for its own negligence or vicarious liability. *Id.* at 12-13. Finally, Omega argues that the expert report of Robert Borison does not raise a triable issue of fact on plaintiff's negligence claims. *Id.* at 13-14.

## II. Standard of Review

Summary judgment should be granted when there is no "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists if the evidence is such that a reasonable trier of fact could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1996).

When the nonmoving party would bear the burden of proof on an issue at trial, the party moving for summary judgment on that issue "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of '[discovery], together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of

material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d

265 (1986). Once the initial burden is met, the nonmoving party must "designate specific facts

showing there is a genuine issue for trial" using evidence cognizable under Rule 56. *Id.* at 324,

106 S. Ct. at 2253. On the other hand, when the moving party would bear the burden of

persuasion on an issue at trial, it must come forward with evidence that would entitle it to a

directed verdict if uncontroverted at trial. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257,

1264-65 (5th Cir. 1991); *see also Celotex Corp.*, 477 U.S. at 331, 106 S. Ct. at 2557 (White, J.

concurring) (citing 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §

2727, p. 121 (2d ed. 1983)). If this initial burden is met, the burden then shifts to the nonmoving

party to either come forward with evidence showing a genuine issue for trial or to demonstrate

the ability to develop such evidence through discovery. *Int'l Shortstop, Inc.*, 939 F.2d at 1265.

"[U]nsubstantiated assertions" and "conclusory allegations" will not defeat a properly

supported motion for summary judgment. *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994);

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3188, 111 L. Ed. 2d 695

(1990). "If the evidence is merely colorable, or is not significantly probative," summary

judgment is appropriate.  *Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511 (internal citations

omitted). "Only disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S. Ct. at 2510.

When reviewing a motion for summary judgment, a court must view the evidence and

inferences drawn therefrom in the light most favorable to the non-moving party. *Daniels v. City

of Arlington, Texas*, 246 F.3d 500, 502 (5th Cir. 2001). Summary judgment does not allow a

court to resolve credibility issues or weigh evidence. *Int'l Shortstop, Inc.*, 939 F.2d at 1263.

4

III. Analysis

A. *Unseaworthiness*

Omega first argues that plaintiff cannot show a triable issue of fact regarding the seaworthiness of its vessel at the time of the incident in this case. Rec. Doc. 23-1 at 4. Vessel owners are liable to seamen for injuries proximately caused by the unseaworthiness of their vessels. "A vessel is unseaworthy only if it presents an unreasonable risk of harm to the seaman." *Park v. Stockstill Boat Rentals, Inc.*, 492 F.3d 600, 604 (5th Cir. 2007) (citing *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 80 S. Ct. 926, 4 L. Ed. 2d 941 (1960) and *Bommarito v. Penrod Drilling Corp.*, 929 F.2d 186 (5th Cir. 1991)). The owner is not obligated to furnish an "accident-free" ship. *Id.* Seaworthiness requires only that a vessel and its appurtenances be reasonably suited for its intended purpose or use. *Id.*

Omega argues that plaintiff's seaworthiness claim must fail because plaintiff admitted throughout his deposition that the conditions on the Amelia, including the equipment, were in fine working condition. *See* Pl.'s Dep. 102, 105, 118. In his opposition to summary judgment, plaintiff fails to argue that any condition existing aboard the Amelia on the day of his injury rendered the vessel unseaworthy, choosing to argue instead that Omega is liable for its own and its servants' negligence under the Jones Act. *See generally* Rec. Doc. 27. Against this backdrop, Omega is entitled to summary judgment on plaintiff's unseaworthiness claim.

B. *Jones Act: Contributory Negligence/Primary Duty*

Omega next argues that plaintiff was the sole negligent cause of his own back injury when he failed to wait for assistance before attempting to pull up the net on the Amelia. Rec. Doc. 23-1 at 7-13. Omega points to several cases that it claims are analogous to the present case,

5

in which employees are found to have negligently assumed risks by rushing into heavy lifting assignments when help was not forthcoming and there was no urgency attached to the task. Omega argues that plaintiff's Jones Act claims are foreclosed by Omega's blamelessness and plaintiff's breach of a primary duty. Omega finally argues that the expert testimony of Robert Borison is insufficient to create a triable issue of fact on his claims for negligent failure to install mechanical lifting equipment or employ Job Safety Analysis (JSA). *Id.* at 13-15. The Court considers these arguments in reverse order.

The Jones Act creates a statutory cause of action for negligence. *Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 415, 129 S.Ct. 2561, 2570, 2009 A.M.C. 1521 (2009). Under the Jones Act, an employer owes its employees a duty of reasonable care. *Verret v. McDonough Marine Serv.*, 705 F.2d 1437, 1441 (5th Cir. 1983). The Jones Act simultaneously obligates the seaman to act with ordinary care under the circumstances. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 339 (5th Cir. 1997) (en banc). The seaman must act with the care, skill, and ability expected of a reasonable seaman in like circumstances. *Id.*  Thus, comparative negligence applies under the Jones Act, "barring an injured party from recovering for the damages sustained as a result of his own fault." *Miles v. Melrose*, 882 F.2d 976, 984 (5th Cir. 1989) *aff'd sub nom. Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S. Ct. 317, 112 L. Ed. 2d 275 (1990). "[T]he defendant has the burden of proving that the plaintiff was contributorily negligent and that such negligence was the proximate cause in producing his injury." *Id.* Finally, the primary duty doctrine will act as an absolute bar to plaintiff's recovery, if he has committed an act of negligence by breaching a primary duty to his employer and the employer is completely free from fault. *See Nelon v. Cenac Towing Co. LLC*, No. 10-373, 2011 WL 289040 at *16-17 (E.D.

La. Jan. 25, 2011).[2]

1. Omega's Jones Act Liability

Plaintiff framed his Jones Act claims in vague terms in his complaint in this matter. In opposition to summary judgment, he has clarified that he contends Omega was negligent in failing to provide a competent crew, failing to terminate Ben Turrell, failing to provide mechanical means to lift the net, and failing to perform Job Safety Analysis on the net pulling task. Rec. Doc. 27 at 7-13. He also adds that Omega is vicariously liable for Mr. Turrell's tortious conduct. *Id.* at 13.

Omega argues that plaintiff's claim of negligent failure to supply mechanical net lifting equipment should be dismissed with prejudice because it relies on the tainted opinions of Robert Borison and plaintiff's "sham" estimate that the net in this case weighed over 100 pounds. Rec. Doc. 23-1 at 13-14. Summary judgment is warranted on this claim, though not for the reasons pressed by Omega.[3] In this case, Omega's own safety protocols support the need for *some kind* of assistance in plaintiff's net pulling assignment. Omega trained its employees to keep their back straight and knees bent while lifting objects to prevent injury, yet the surface where plaintiff was required to pull the net did not allow him to bend at the knees or keep his back straight. Eldridge Dep. 20:4-14; Davis Dep. 15:9-16:7; Harcum Dep. 26:4-18; *see also* Rec. Doc.

---

[2]Because this is a claim for ordinary negligence under the Jones Act, Omega's primary duty arguments are virtually indistinguishable in their application from contributory negligence. *See id.*

[3]Although the Court has excluded Mr. Borison's testimony, it remains free to reach any conclusion that he reached as long as it is supported by the record. After all, the Court excluded Mr. Borison's testimony *because* it fell into the realm of common sense inferences to be drawn from the record.

27-6. As far as the weight of the net is concerned, Mr. Davis stated that the 150,000 fish that

plaintiff attempted to pull in this case was a medium sized would have made the net too heavy

for any one person to pull. Davis Dep. 18:7-19:21. However, the task was designed for other

crew members be able to help pull. Harcum Dep. 50:38; Eldridge Dep. 28:2-10. The essence of

plaintiff's negligence claims vis-a-vis Ben Turrell is that Mr. Turrell was supposed to be helping

plaintiff. *Id.* at 25:12-26:3. The evidence suggests that he had no other task assigned at the time.

*See, e.g.*, Melton Dep. 22:12-18. Not even the materials relied upon by Mr. Borison support that

lifting any amount of weight was unsafe at the angle at which plaintiff was required to bend to

lift the net. Rec. Doc. 27-11 at 9. Plaintiff fails to show that the human assistance contemplated

in the task was insufficient to mitigate risk of injury. Therefore, the evidence does not show

genuine issue of fact regarding the danger inherent in this task or the necessity of mechanical

assistance for it.

Omega next argues that summary judgment should be granted on plaintiff's claim of

negligent failure to perform JSA because it relies on Robert Borison's excluded testimony. Rec.

Doc. 23-1 at 13. The Court has separately held that Mr. Borison lacks the industry-specific

knowledge needed to opine regarding whether a reasonable employer in Omega's position would

have conducted JSA on plaintiff's net-pulling assignment. Plaintiff has put forward no other

evidence to suggest that JSA was required of a reasonable employer under the circumstances.

Summary judgment is therefore warranted.

Omega has not directly attacked the legal sufficiency of plaintiff's proof of any other

claim of negligence raised in plaintiff's complaint. Although Omega has generally maintained

that it is totally free from fault in this case, the Court will not undertake to exhaustively review

8

the summary judgment record for holes where the moving party has not identified the basis for summary judgment or the portions of the evidence that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2553.

2. Contributory Negligence

The bulk of Omega's motion for summary judgment is devoted to arguing that plaintiff's claims of negligence against Omega, Ben Turrell, and Captain Harcum are barred by his own failure to exercise to due care in attempting to pull up the net. Rec. Doc. 23-1 at 7-13.

Claims of self-injury under the Jones Act related to lifting are frequently barred or limited by the seaman's own fault. Maritime Law Deskbook 209 (2010).  In *Pallis v. United States*, 369 F. App'x 538 (5th Cir. 2010), the Fifth Circuit affirmed the trial court's apportionment of 75% fault to the plaintiff, where plaintiff had been given "stop work authority," meaning that he had discretion to stop and wait for assistance or use mechanical help when the lift exceeded his abilities. *See id.* at 540-42. In *Williams v. International Construction Group, LLC*, Judge Fallon granted summary judgment in a case in which plaintiff was injured attempting to lift a heavy "pad eye" because of plaintiff's failure to seek the help of others around before attempting the lift, the failure to employ equipment available, his training in safe lifting, and stop work authority. No. 10-170, 2011 WL 1116312 at *4 (E.D. La. March 23, 2011). Similarly, in *Domingue v. Offshore Services Vessels, LLC*, Judge Lemon granted summary judgment in a case in which plaintiff was required to take a safety class, had the opportunity to ask for help, but did not, and did not use a sledgehammer available for assistance. No. 08-4668, 2009 WL 3254147 at *2-3 (E.D. La. Oct. 7, 2009).

Nevertheless, in *Alvarado v. Diamond Offshore Management, Co.*, Judge Fallon denied

summary judgment in a claim for unsafe lifting assignment conditions when plaintiff claimed expressly for the failure to provide training on proper lifting techniques and use of equipment for assistance. No. 11-25, 2011 WL 4915543 at *2 (E.D. La. Oct. 17, 2011). It follows from these examples that contributory fault, *vel non*, like any kind of negligence, is a "highly factbound" determination. *See Davis v. Abdon Callais Offshore, Inc.*, No. 12-263, 2013 WL 5775907 at *2 (S.D. Tex. Oct. 25, 2013) (denying summary judgment against allegedly negligent plaintiff).

Omega argues that a reasonable mate in plaintiff's position would have waited for assistance to pull up the net and ultimately should have let go of the net before he got injured.[4] This argument has some record support.

Although the weight of the net varies depending on the catch, pulling is only required when there are a lot of fish in the net. Melton Dep. 20:17-21:1. Plaintiff had enough experience (17 years) to know that the maximum weight might be too much for him to bear alone. Pl.'s Dep. 102:19-24. There were five others aboard plaintiff's boat at the time of his injury and Captain Harcum testified that plaintiff had "no reason" not to wait for help before trying to pull up the net. Harcum Dep. 25:1-2, 51:23-25. He further testified that, in his experience, a mate would simply wait for help before pulling up a net that was too heavy. *Id.* at 52:1-7. Martin Melton, who was aboard a different boat at the time of the incident, testified that the other crew aboard plaintiff's boat were trying to get the net tied back when plaintiff attempted to pull the net up.

---

[4]Because Omega would bear the burden of persuasion on the issue of plaintiff's contributory negligence at trial, it must do more than point to the areas of the record which suggest the absence of a triable issue of fact to prevail on summary judgment. Int'l Shortstop, Inc., 939 F.2d at 1264-65. It must come forward with evidence that would entitle it to a directed verdict if uncontroverted at trial, at which point plaintiff inherits the burden to controvert that evidence. *Id.*

Melton Dep. 38:2-9. It stands to reason that plaintiff, who was in charge of his boat, would have been aware of this fact. Harcum Dep. 44:16-20. Clearly, plaintiff would have been unreasonable for rushing in to lift the net when there was no urgency attached to the task, no help available to him, and good reason to believe that the weight of the net might exceed his capacity to bear alone.

However, other evidence supports that plaintiff had reason to move quickly to pull up the net and to expect help when he did so. When asked whether there was a reason why plaintiff could not have waited to pull up the net, Mr. Melton testified that failure to do so quickly enough could result in the fish "busting" through the net and losing the catch and the net. Melton Dep. 34:4-35:6.  Mr. Melton testified that plaintiff "had to" pull up the net when he did. *Id.* at 40:22-41:2. Plaintiff confirmed this testimony at his deposition and in his affidavit in opposition to summary judgment. Pl.'s Dep. 102:2-14; Rec. Doc. 27-2, ¶ 6. The nets are expensive, and crew are paid by the size of the catch. Eldridge Dep. 30:14-20, Apr. 2, 2014; Rec. Doc. 27-2, ¶ 6. This pressure to save the catch and the net runs counter to the "stop work authority" that served as a basis for summary judgment in *Pallis* and *Williams*.

Omega argues in reply that the possibility of losing the net is merely hypothetical in that plaintiff has not proven that he actually needed to save the net when he started pulling it up. Rec. Doc. 33 at 1. However, the evidence need not show a genuine issue of fact regarding whether plaintiff actually needed to save the net. It need only show a genuine issue of fact regarding whether a reasonable mate in plaintiff's position would have started pulling the net before obtaining a crew member's express agreement to help him. The evidence clearly shows a genuine issue in this regard. *Cf.* Melton Dep.  40:22-41:2.

11

Further, evidence supports that plaintiff justifiably relied on Ben Turrell's ability to assist when he started pulling up the net. Plaintiff's affidavit in response to summary judgment states that it was Ben Turrell's job to help plaintiff pull up the net. Rec. Doc. 27-2, ¶ 4.[5] William Eldridge, another crew member, testified that it would have been Mr. Turrell's responsibility to help with the net, at the end of every set. Eldridge Dep. 25:17-19.  While Captain Harcum disagreed that Ben Turrell was the only person responsible for helping plaintiff, he agreed that he would be among those who helped when he was finished work. Harcum Dep. 38:11-14. Everyone who witnessed this incident testified that Mr. Turrell had finished working when it happened. *See* Melton Dep. 13:4-7, 22:12-18 (testifying that Mr. Turrell was just "standing" toward the rear of the boat, and looking at plaintiff, when the incident took place); Pl.'s Dep. 105:9-10 (testifying that he did not ask anyone else to help because "[e]verybody *else* was doing their job") (emphasis added); *id.* at 108:22-109:17 (testifying that Mr. Turrell had finished his previously assigned task - "messing around with the net" at the back of the boat - by the time plaintiff was pulling up on the net). Omega has not proven that plaintiff was negligent in failing to wait for someone other than Mr. Turrell to become available to help. Plaintiff had no reason to think that Mr. Turrell would be unavailable to assist at the time.

The Court cannot find plaintiff negligent for holding onto the net until he injured his back because one of his claims in this case *is* negligent failure to provide stop work authority. *Cf. Alvarado*, 2011 WL 4915543 at *2 (denying summary judgment on contributory negligence where plaintiff claimed he was improperly trained).  Even in its reply memorandum filed in this

---

[5] In its reply memorandum in support of summary judgment, Omega argues that the Court should treat this affidavit as a sham. Rec. Doc. 33. However, plaintiff's affidavit is not sufficiently inconsistent with his deposition testimony to constitute a sham.

case, defendant has not identified portions of the record and affidavits demonstrating the absence of a genuine issue of fact on this claim. *Cf. Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2553. Even assuming that defendant had properly raised this ground for summary judgment, the evidence presented supports that holding onto the net once grabbed was more than a self-imposed expectation. The livelihood of plaintiff and crew was dependent on maintaining the catch. *See, e.g.*, Eldridge Dep. 30:14-20. It was plaintiff's duty as mate in charge of the purse boat to make sure the net was brought up properly. Harcum Dep. 37:16-20; 38:7-10. For these reasons, summary judgment is unwarranted as to this aspect of plaintiff's Jones Act claim.

Finally, because the record does not establish that plaintiff breached a primary duty to ensure that the nets aboard his boat were handled safely or that Omega was *completely free* from fault, the application of the primary duty doctrine to bar plaintiff's recovery is unwarranted. *See Nelton v. Cenac Towing Co.*, 2011 WL 289040. For all of these reasons, summary judgment is unwarranted on plaintiff's Jones Act claims.

Accordingly,

IT IS ORDERED that Omega Protein, Inc.'s Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART. Rec. Doc. 23.

New Orleans, Louisiana, this 12th of June, 2014.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE